The order below is hereby signed.

Signed: July 17, 2006.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re ) | |
| ) | |
| CALVERT M. WILSON, ) | Case No. 01-00092 |
| ) | (Chapter 13) |
| Debtor. ) | |
| _____ ) | |
| ) | |
| CALVERT M. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. |
| ) | 06-10037 |
| HOME-SAVERS, LLC, a foreign ) | |
| limited liability company, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

PRELIMINARY ORDER RE MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Calvert M. Wilson ("Wilson"), was the owner of real property known as 1905 2nd Street, N.E., Washington, D.C. (the "2nd Street Property"). Wilson's complaint seeks, in part, a declaratory judgment that a deed and a deed of trust he executed on November 14, 2001, to convey to the defendant 1905

2nd ST, NE, LLC,[1] interests in the 2nd Street Property, and any other aspects of the transaction involving those instruments (including the borrowing of money), were void under the Bankruptcy Code (11 U.S.C.) due to the pendency of his bankruptcy case.[2]  Both Wilson and the defendants have filed motions for summary judgment regarding this claim.[3]

Based on an issue the parties did not brief, my preliminary view is that the deed and the deed of trust, and other aspects of the transaction, were not void.  Unless Wilson files a further memorandum demonstrating that my preliminary analysis below is in

---

[1]  The complaint refers to this defendant as 1905 2nd Street, NE, LLC, but I will refer to this defendant by the name that appears in the deed and the deed of trust.

[2]  The plaintiff filed his complaint in the United States District Court for the District of Columbia where it was assigned Civil Action No. 06-0069 (JDB).  The District Court read the complaint as seeking, in part, a declaration that the transaction at issue in the complaint was void under the Bankruptcy Code (11 U.S.C.).  Because that claim arose under the Bankruptcy Code, the District Court issued an order on April 24, 2006, referring the claim (and any related counterclaim by the defendants) to this court for disposition pursuant to 28 U.S.C. § 157(a) and DCt.LBR 5011-1.  The defendants filed no related counterclaim.  Other claims raised in the complaint remain pending in the District Court for disposition by that court.

[3]  The claim is a core proceeding that this court may hear and determine under 28 U.S.C. § 157(b)(1) as it arises under the Bankruptcy Code.  Accordingly, any review of this court's final judgment must be sought by way of appeal.  28 U.S.C. § 158(a)(1). The claim is not a proceeding that "is not a core proceeding but that is otherwise related to a case under title 11" under 28 U.S.C. § 157(c)(1) in which I would be required to submit to the District Court proposed findings of fact and conclusions of law.

error,[4] I will grant the defendants' motion, deny Wilson's motion, and enter a declaratory judgment that the deed and the deed of trust, and other aspects of the transaction, are not void under the Bankruptcy Code.

I

Wilson specifically claims that the deed and the deed of trust, and other aspects of the transaction, are void under 11 U.S.C. §§ 362(a), 363, 364, and 549.  However, as explained in part II, below, that claim is necessarily premised on the 2nd Street Property having been property of the estate in his bankruptcy case when the instruments were executed.  The file in Wilson's bankruptcy case demonstrates that as a matter of law the property had ceased to be property of the estate prior to Wilson's executing the instruments.  Summary judgment in favor of the defendants is thus appropriate.

A.

Wilson filed a Statement of Undisputed Facts in support of his motion for summary judgment.  Wilson apparently intended that document to serve as his "statement of material facts as to which the moving party contends that there is no genuine issue" which is required by LCvR 56.1 of the District Court (made applicable

---

[4] When a court considers an apparently dispositive issue that the parties ignored, "it should ensure procedural fairness . . . by providing each party with the opportunity to brief [the] issue . . . ." Randolph v. United States, 882 A.2d 210, 227 (D.C. 2005).

3

by LBR 7056-1). That Statement recites that "[t]he 2nd Street Property is an asset of Wilson's Chapter 13 Estate. 11 U.S.C. § 541." Under Rule 56.1, "the court *may* assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." (Italics added.) The defendants have not controverted Wilson's statement that the 2nd Street Property "is an asset of Wilson's Chapter 13 Estate" and, indeed, appear to have assumed that it was property of the estate when Wilson executed the deed and the deed of trust.

   Nevertheless, I will not treat Wilson's statement that the 2nd Street Property "is an asset of Wilson's Chapter 13 Estate" as an admitted fact. First, in making the statement, Wilson failed to comply with the requirement in Rule 56.1 that the statement "shall include references to the parts of the record relied on to support the statement." Second, the statement is one not of fact but of law (based on what transpired in Wilson's bankruptcy case). The parties may not stipulate to legal conclusions to be reached by the court. <u>Case v. Los Angeles Lumber Prods. Co.</u>, 308 U.S. 106 (1939); <u>NLRB Union, Local 6 v. FLRA</u>, 842 F.2d 483, 485 n.6 (D.C. Cir. 1988); <u>Sebold v. Sebold</u>, 444 F.2d 864 (D.C. Cir. 1971). Third, by use of the word "may," Rule 56.1 recognizes that in appropriate circumstances a court

4

has discretion not to treat an uncontested statement as admitted. Finally, "a court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447 (1993) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77 (1990)).

B.

In January 2001 Wilson filed a petition in this court commencing a case under chapter 13 of the Bankruptcy Code. Included in the property of the estate under 11 U.S.C. § 541 was Wilson's 2nd Street Property. Under 11 U.S.C. § 1321, Wilson was required to file a plan, and he filed an initial plan and then an amended plan. Once a plan is confirmed under 11 U.S.C. § 1325, the provisions of that plan "bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a). On May 21, 2001, the clerk entered the court's order confirming Wilson's amended plan, and he thus became bound by its terms. Under 11 U.S.C. § 1327(b):

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Neither the confirmed plan nor the order confirming that plan included a provision to alter the general rule that confirmation vests the property of the estate in the debtor. Accordingly, the property of the estate in existence on May 21, 2001, including the 2nd Street Property, vested in Wilson upon confirmation of

the plan on that date.  In part II, below, I conclude that this resulted in the 2nd Street Property no longer being property of the estate.  The confirmed plan and the order confirming it were never modified to alter that result, and in 2004, despite the pendency of Wilson's bankruptcy case, the 2nd Street Property remained vested in Wilson, and not property of the estate, when he executed the deed and the deed of trust at issue.

C.

The deed and the deed of trust that Wilson attacks as void were executed on November 14, 2004, when Wilson was facing a foreclosure of the 2nd Street Property by ABN AMRO (which had obtained relief from the automatic stay of 11 U.S.C. § 362(a) to permit it to proceed with foreclosure).  On November 14, 2004, in exchange for a $30,525.14 emergency loan used to bring ABN AMRO's loan current, Wilson executed an agreement with Home Savers Plus, LLC (the "Agreement").  Both parties treat Home Savers Plus, LLC and the defendant Home Savers, LLC ("Home Savers") as one and the same, and so will I.  Pursuant to the Agreement, Wilson was given 60 days to refinance the 2nd Street Property and, out of the refinance proceeds, pay off ABN AMRO's loan, and pay to Home Savers "$122,656.07 plus any costs advanced to stop the foreclosure."  The Agreement required Wilson to execute "needed documents to protect the interests of Home Savers Plus, including, deeds, deeds of trusts, and related settlement

documents" but provided that the executed documents would be held in escrow "until the expiration of this agreement." Incident to the Agreement, Wilson also executed on November 14, 2001:

- a Deed conveying the 2nd Street Property to Home Savers' affiliate and co-defendant, 1905 2nd ST NE, LLC; and

- a Deed of Trust in favor of 1905 2nd ST NE, LLC as "Lender" to secure repayment of a debt of $30,535.14, plus interest, recited to be evidenced by an agreement of the same date.[5]

The foregoing are the deed and the deed of trust that Wilson seeks to declare void. The Agreement with Home Savers provided:

> In the event that that [sic] the refinance does not take place with the specified time-frame, the documents held in escrow shall be released and recorded. This includes the deed that transfers ownership of the property.

Pursuant to that provision, the defendants have now recorded with the District of Columbia Recorder of Deeds the Deed conveying title to the 2nd Street Property to 1905 2nd ST NE, LLC.

---

[5] Had Wilson achieved a timely refinance, a third document appears to have required payment to be made to 1905 2nd ST NE, LLC (and not Home Savers Plus, LLC) out of the refinance proceeds: Wilson executed an Assignment of Proceeds assigning to 1905 2nd ST NE, LLC "from settlement on the property" (presumably meaning the settlement of the refinance contemplated by the agreement with Home Savers Plus, LLC):

> proceeds from settlement [to] be distributed completely up to the amount of $122,656.07. This includes the monies advanced to stop the foreclosure sale.

7

II

As discussed above, under § 1327(b) the 2nd Street Property had remained vested in Wilson since his plan was confirmed in 2001. The critical issue is whether the 2nd Street Property nevertheless remained "property of the estate" when Wilson executed the deed and the deed of trust in 2004. If it was no longer property of the estate, none of the provisions upon which Wilson relies in pursuing his claim to void the deed and the deed of trust provide a basis for such relief.

A.

When the provisions of a confirmed plan or the order confirming the plan do not override the general rule of § 1327(b) that the property of the estate vests in the debtor, the courts have given § 1327(b) varying interpretations regarding whether any property of the estate remains in the case. Some courts have held that § 1327(b) results in there being no property of the estate in the case. See Oliver v. Toth (In re Toth), 193 B.R. 992 (Bankr. N.D. Ga. 1990). Under that interpretation, the 2nd Street Property ceased to be property of the estate.

Other decisions hold that at least some property of the estate remains despite confirmation of the plan, but they disagree regarding the extent. Under the interpretation of § 1327(b) that I find most reasonable and thus adopt, property of the estate in existence at the time of confirmation vests in the

debtor and ceases to be property of the estate.  See Barbosa v. Soloman (In re Barbosa), 235 F.3d 31, 36-37 (1st Cir. 2000).

An alternative view of § 1327(b) is that such property as is necessary for the execution of the chapter 13 plan remains property of the estate.  See Telfair v. First Union Mortgage Corp. (In re Telfair), 216 F.3d 1333 (11th Cir. 2000); Black v. U.S. Postal Service (In re Heath), 115 F.3d 521, 524 (7th Cir. 1997).  However, that interpretation of § 1327(b) necessarily entails uncertainty in the determination of what property is necessary to the completion of the plan.[6]  In any event, there is no indication here that the 2nd Street Property was necessary to the success of the chapter 13 plan: Wilson obtained a discharge despite the execution of the deed and the deed of trust.  That suffices under the Telfair and Heath approach to demonstrate that the 2nd Street Property was not property of the estate.  See Telfair, 216 F.3d at 1340 n.14.

---

[6] It is appropriate to treat plan payments received by the trustee and required by the plan's terms to be paid to creditors as remaining estate property upon confirmation despite § 1327(b), or at least as property held in trust for creditors or as to which they have a superior right by reason of the binding terms of the plan.  See In re Parrish, 275 B.R. 424 (Bankr. D.D.C. 2002); 18 U.S.C. § 153(a)(subjecting a trustee to criminal penalties if she embezzles property belonging to "the estate of a debtor").  This is consistent with Barbosa, because Barbosa addresses the impact of § 1327(b) on property as to which the confirmed plan failed to alter the general rule of § 1327(b), and a confirmed plan plainly alters § 1327(b) as to a debtor's rights in payments received by the trustee.  It is unnecessary to rely on the amorphous test of Telfair and Heath to achieve the same result.

9

Finally, there is a view that although the property of the estate vests in the debtor, it does not cease to be property of the estate until the case is dismissed, closed, or converted. <u>See</u>, <u>e.g.</u>, <u>Riddle v. Aneiro (In re Aneiro)</u>, 72 B.R. 424, 428-29 (Bankr. S.D. Cal. 1987).  However, that interpretation renders § 1327(b) meaningless, and I decline to follow it.

Because the 2nd Street Property was property of the estate immediately prior to confirmation of Wilson's amended plan, the 2nd Street Property ceased under <u>Barbosa</u> to be property of the estate upon confirmation of the plan.  Accordingly, Wilson's execution in 2004 of the deed and the deed of trust relating to the 2nd Street Property was not an act relating to property of the estate.

B.

It follows that the Bankruptcy Code provisions upon which Wilson relies in attempting to void the deed and the deed of trust are inapplicable to the extent their applicability depends on the 2nd Street Property having been "property of the estate" at the time of execution of those instruments.  Nor are those provisions applicable on any other basis.

First, the automatic stay of § 362(a) stays three categories of acts:

- certain acts against property of the estate,
- certain acts relating to claims or judgments against

>  the debtor that arose or were obtained *before the commencement of the case*, and
> - the commencement or continuation of a proceeding against the debtor that was or could have been commenced *before the commencement of the case*.

As it related to acts against the 2nd Street Property as property of the estate, the automatic stay terminated when the 2nd Street Property ceased to be property of the estate by reason of its having vested in Wilson in May 2001 incident to the confirmation of Wilson's amended plan. 11 U.S.C. § 362(c)(1).[7] The defendants did not have a prepetition claim or judgment against Wilson, and they did not commence or continue a proceeding against Wilson (let alone one that was or could have been commenced before the commencement of the case).

Second, § 363 deals with the use, sale, or lease "of property of the estate."

Third, § 364 deals with a trustee's obtaining credit "allowable under section 503(b)(1) as an administrative expense" or secured by a lien "on property of the estate." The defendants are not asserting an administrative claim in the case, and their

---

[7] The court granted Wilson a discharge in his bankruptcy case on July 1, 2005. That terminated the automatic stay of § 362(a) as applicable to acts other than an act against property of the estate. 11 U.S.C. § 362(c)(2). Accordingly, at this time, no automatic stay is in place regarding either the 2nd Street Property as property of the estate or acts against Wilson or against Wilson's property.

11

lien is on the debtor's property, not on property of the estate.[8]

Finally, § 549 deals exclusively with transfers "of property of the estate."

### III

After the initial preparation of this order, and after the deadline for memoranda had expired, the defendants filed, without leave of court, a supplemental memorandum in support of their position.  The supplemental memorandum is rejected both as untimely and as advancing an erroneous argument.  The defendants argue that the 2nd Street Property ceased to be property of the estate when Wilson claimed as exempt from property of the estate under 11 U.S.C. § 522(b) his equity in the property and no one timely objected to the exemption under 11 U.S.C. § 522(l).  However, an exemption of less than the full value of a property from the estate does not operate to exempt the property in its entirety from the estate.  See In re Bregni, 215 B.R. 850 (Bankr. E.D. Mich. 1997).

---

[8] Moreover, § 364 is inapplicable to a debtor's obtaining credit unless the debtor is "engaged in a business" and thus authorized by 11 U.S.C. § 1304(b) to exercise the rights and powers of a trustee under § 364.  Wilson has not alleged that he was engaged in a business.  If he had been engaged in a business, he would have been required to file reports regarding operation of that business as required by 11 U.S.C. §§ 1304(c) (making the reporting requirements of 11 U.S.C. § 704(8) applicable to a chapter 13 debtor engaged in a business).  He filed no such reports.

IV

In light of the foregoing, it is

ORDERED that within 14 days after entry of this order, the parties may file further memoranda addressing the propriety of the court's preliminary analysis set forth above, and that if the plaintiff fails to file a further memorandum, the court will enter summary judgment in favor of the defendants.

[Signed and dated above.]

Copies to:

All counsel of record; Honorable John D. Bates.